# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 22-0911V

| | |
|---|---|
| KHALIA JONES,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: September 8, 2025 |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Camille Jordan Webster*, U.S. Department of Justice, Washington, DC, for respondent.

**DECISION DISMISSING CASE**[1]

On August 16, 2022, Khalia Jones filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza ("flu") vaccine she received on November 1, 2020. Petition at 1. This case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent argues that the claim cannot meet the statutory severity requirement, and for the reasons stated below I deem the claim appropriately dismissed on that basis.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

I. **Procedural History**

On December 4, 2023, about 15 months after this case was initiated, Respondent filed his Rule 4(c) Report arguing that "Petitioner has failed to demonstrate that she suffered the residual effects of her SIRVA for more than six months following her receipt of the flu vaccine," because she sought treatment for one month after vaccination and then did not seek any further treatment for more than 15 months. Rule 4(c) Report at 9. Petitioner filed a Motion for Ruling on the Record ("Mot.") on February 5, 2024. ECF No. 26. Respondent filed a response ("Resp.") on April 5, 2024, and Petitioner filed a reply ("Repl.") on April 18, 2024. ECF No. 27-28. The matter is now ripe for resolution.

II. **Relevant Facts**

   A. *Medical Records*

Petitioner received a flu vaccine in her left deltoid on November 1, 2020. Ex. 1 at 5. Three weeks later, on November 23, 2020, she had a telehealth appointment during which she reported left shoulder pain after a "flu shot given close to [her] shoulder joint 3 weeks ago." Ex. 9 at 16. Petitioner was given an oral steroid prescription and advised to see an orthopedist if she did not quickly improve. *Id*. at 16-17.

A week later, Petitioner saw an orthopedist for her left shoulder pain. Ex. 3 at 33. She reported "significant" improvement with the Medrol Dosepak. *Id*. On exam, her range of motion was reduced and the Hawkins-Kennedy impingement test was positive. *Id*. Petitioner was advised that she may have "inflamed subacromial subdeltoid bursa." *Id*. at 34. The only treatment recommended was "continue[d] observation" and Petitioner was told to follow up with her primary care provider ("PCP") for further care. *Id*.

Over four months later, on April 14, 2021, Petitioner was seen by a nurse practitioner for a sick visit. Ex. 3 at 43. The record does not indicate any complaints of shoulder pain.

On May 13, 2021, Petitioner was seen for a preventative care visit in connection with her fertility treatments. Ex. 4 at 10. The physical exam specifically states "LUE: normal range of motion and strength." *Id*. at 13.

Petitioner's fertility treatments were successful and she became pregnant. On January 3, 2022, just before the birth of her child, she received another flu vaccine dose (this time in her right arm), and a Tdap vaccine in her left arm. Ex. 4 at 28. She was hospitalized from February 3-5, 2022 for her child's birth. *See generally* Ex. 11.

Petitioner returned to her PCP on March 16, 2022. Ex. 4 at 18. She now reported pain "at her left wrist at [the] base on [thumb]" and "ongoing issues with her left shoulder which is getting exacerbated by lifting the baby." *Id*. at 20. The physical exam states only "pain when lifting her left shoulder." *Id*. at 21. Petitioner was diagnosed with tendonitis in her left wrist and referred to an orthopedic surgeon. *Id*. There is no diagnosis related to Petitioner's left shoulder,[3] and no recommended treatment.

### B. Witness Testimony

Petitioner filed a declaration dated August 25, 2022, in support of her claim. Ex. 2. She stated that "it has been eight months[4] since the onset of [her] shoulder injury, and [she] still experience[s] significant residual effects," including difficulty sleeping and completing the activities of daily living. *Id*. at ¶7. She stated that she had tried cortisone injections to relieve her pain, but has been told there are no other treatment options. *Id*. Petitioner has "elected to not continue to receive corticosteroid injections because they are expensive, only help for a short period of time," and have to be limited in number. *Id*. at ¶15.

Petitioner maintains that her pain was "constant and excruciating" for the first six months after her vaccination. Ex. 2 at ¶13. Then, her pain became more intermittent, but continued to limit her activities. *Id*. at ¶15. She describes herself as "constantly exhausted, in pain," and "worried that [her] shoulder will never fully recover and that [she] will be forced to live with a limited range of motion and pain for the rest of [her] life." *Id*. at ¶17.

Petitioner's co-worker, Marcia de Oliveira Fernandes, filed a declaration dated July 11, 2023. Ex. 12. Ms. Fernandes had worked with Petitioner for approximately five years and speaks to her regularly. *Id*. at ¶2-3. She recalled Petitioner taking an "excessive" amount of time off from work to go to doctors for a few months after her vaccination. *Id*. at ¶4-5. Ms. Fernandes remembered Petitioner telling her that "she was struggling with her shoulder pain interfering with caring for her baby," and that she could not lift him without severe pain. *Id*. at ¶7.

Petitioner's friend, Samantha McGeary, filed a declaration dated August 1, 2023. Ex. 13. Ms. McGeary is a registered nurse and recalled Petitioner calling her after her vaccination to seek her advice about her shoulder pain. *Id*. at ¶1, 5. She remembered Petitioner continuing to complain of "severe" shoulder pain during their periodic conversations. *Id*. at ¶6. Ms. McGeary stated that Petitioner was undergoing fertility

---

[3] The record does list "subacromial bursitis" with an onset of 11/30/2020 as a reviewed problem. Ex. 4 at 20.

[4] Petitioner's affidavit is dated August 25, 2022, one year and nine months after her vaccination on November 1, 2020. *See* Ex. 2 at 5.

treatments "in November of 2020 and the beginning of 2021," which caused her to postpone treatment for her shoulder pain. *Id*. at ¶7. She recalled Petitioner returning to treatment in March 2022 after giving birth because she "finally felt like she was able to seek out treatment for her shoulder." *Id*. at ¶8. Petitioner's most recent complaint of shoulder pain to Ms. McGeary was one week before her declaration. *Id*. at ¶9.

Petitioner's best friend, Shandel Carter, filed a declaration dated June 21, 2023. Ex. 14. Ms. Carter stated that she speaks with Petitioner daily, including the day of her vaccination, when Petitioner called her to express her concern at "how much pain she was in immediately after the vaccination." *Id*. at ¶5. She recalled Petitioner asking her to help with household tasks and daily activities due to her shoulder pain. *Id.* Ms. Carter recalled that "between November 2020 and March 2020, [Petitioner] continuously complained about her shoulder pain . . . daily." *Id*. at ¶6. She stated that Petitioner did not seek treatment until March 2022 "because she was dealing with a high-risk pregnancy and complications." *Id*. She witnessed Petitioner "struggling with picking up her son and also bringing in and out of his carrier" after giving birth. *Id*. Ms. Carter also noted that Petitioner "began experiencing pain in her hand." *Id*.

Petitioner's friend, Anita Nutter, filed a declaration dated September 13, 2023. Ex. 15. Ms. Nutter stated that she typically communicates with Petitioner daily. *Id*. at ¶2. She recalled Petitioner telling her about the "nearly unbearable" pain she was experiencing after her vaccination. *Id*. at ¶3. She recalled Petitioner having to "missed a lot of work to visit the doctor and try to get help for her shoulder pain." *Id*. at ¶4. She stated that Petitioner told her about "many visits to her primary physician" for treatment for shoulder pain. *Id*. Ms. Nutter stated that she knew that Petitioner could not seek treatment "for a period of time because she was in the process of seeing fertility doctors to try and get pregnant." *Id*. at ¶5. She stated that during pregnancy, Petitioner's "main priority was having a safe and healthy pregnancy." *Id*. Ms. Nutter stated that once the baby was born, Petitioner told her that her shoulder pain was worsening. *Id*. She recalled that Petitioner "sought out further treatment for her shoulder after giving birth, but her pain still lingers." *Id*. at ¶6.

### III.   Authority

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at

*4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569

5

F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

## IV.   Analysis

Respondent contests whether the record supports the conclusion that she suffered the residual effects of her vaccine injury for more than six months, as required by the Vaccine Act. Resp. at 8. Because Petitioner received her vaccination on November 1, 2020, and experienced immediate pain, she must establish that her symptoms continued until at least May 1, 2021. Ex. 1 at 5; Ex. 2 at ¶10.

The record clearly demonstrates the kind of close-in-time to vaccination facts supportive of a SIRVA. Thus, Petitioner had a telemedicine appointment within three weeks of her vaccination, and then had an in-person orthopedic evaluation one week later, on November 30, 2020. Ex. 3 at 33-34; Ex. 9 at 16-17.

After that, however, there are no medical records evidencing left shoulder pain until March 16, 2022 – more than 15 months later. Petitioner argues that the March 16th visit is sufficient to satisfy the severity requirement because it contains a diagnosis of subacromial bursitis dating back to November 2020, and because it documents that Petitioner complained of "ongoing issues with her left shoulder which is getting exacerbated by lifting the baby." Mot. at 10; Repl. at 7. But Petitioner's chief complaint during that visit was new left wrist pain. Ex. 4 at 20. And although Petitioner mentioned shoulder pain during the visit, no treatment was recommended. *Id*. at 21.

Thus, even to the extent shoulder issues still existed at this time, this record does not support the inference that they were ongoing – and documents in the immediate months thereafter do not corroborate that contention. Petitioner had a sick visit with her PCP on April 13, 2021, during which she may not reasonably have been expected to mention shoulder pain. Ex. 3 at 43. But when she visited her doctor on May 13, 2021 (a time very close to six months after the onset of her pain) for a preventative care physical, Petitioner's musculoskeletal exam revealed full range of motion and strength of her left upper extremity. *See* Ex. 4 at 13.

This May 2021 record directly contradicts the witness statements – which overall indicate that Petitioner was regularly in severe pain, particularly in the first six months after vaccination. *See* Ex. 2 at ¶13 ("In the six months after I received the vaccine, my pain was constant and excruciating."); Ex. 13 at ¶6; Ex. 14 at ¶6; Ex. 15 at ¶3. This kind of testimonial evidence has been deemed insufficient to establish that the six-month requirement has been met. *See, e.g.*, *Uetz v. Sec'y of Health & Human Servs.*, No. 14-29V, 2014 WL 7139803, at * 3-4 (Fed. Cl. Spec. Mstr. Nov. 21, 2014) (finding affidavits

contrary to the contemporaneous medical record did not support a finding that the six-month requirement had been satisfied); *see also Volger v. Sec'y of Health & Human Servs.*, No. 11-424V, 2014 WL 1991851, at *4, 8-10 (Fed. Cl. Spec. Mstr. Apr. 25, 2014) (recognizing that filed affidavits can "bulwark" a claim that an injury meets the six-month requirement, but not in the face of a medical record to the contrary). The record overall supports the conclusion that Petitioner's vaccine-related shoulder pain likely resolved before this time.

Petitioner argues that she did not seek further treatment for her shoulder pain because she "elected not to continue to receive corticosteroid injections because they are expensive, only help for a short period of time, and [she is] only able to receive so many." Ex. 2 at ¶15. But Petitioner has not filed any medical records indicating that she was ever given a cortisone injection. The orthopedist that Petitioner saw on November 30, 2020 did not recommend an injection, indicated that Petitioner was improving with oral steroid treatment, and recommended further treatment with her PCP. Ex. 3 at 33-34. Even Petitioner's own recitation of the relevant facts does not suggest that she sought further treatment after the November 30 visit, or received an injection. *See* Mot. at 3-4. Further, Petitioner's witnesses more consistently associated the gap in Petitioner's shoulder treatment to her fertility treatments and pregnancy, than to the lack of available treatment. *See* Ex. 13 at ¶7; Ex. 14 at ¶6; Ex. 15 at ¶5. Petitioner's explanation for the gap in treatment is simply not corroborated by the medical record evidence.

Finally, Petitioner's records establish that on January 3, 2022 – two months before she returned to treatment - Petitioner received a Tdap vaccine in her left arm. Ex. 4 at 28. Petitioner received a flu vaccine in her right arm at the same appointment, suggesting that she could have chosen to avoid an additional vaccination in her left arm. *Id.* And Petitioner offered no explanation for why she would receive another vaccine in her left arm, if, at the time she continued to experience (for more than a year) the type of "life changing" shoulder pain described in her declaration. *See* Ex. 2 at ¶14, 16-17.

In many cases, efforts to treat shoulder pain beyond the severity timeframe – and after substantial gaps in treatment - allow for the conclusion that the claimant was still experiencing pain, even if he or she did not consistently seek treatment during a gap period. Here, however, Petitioner's post-six months treatment does not provide preponderant evidence that her symptoms *at that time* were a continuation the previous shoulder pain, and therefore, caused by her vaccination. During the gap, Petitioner went through pregnancy and childbirth, and received another vaccination in her injured arm. Further, at the time she returned to treatment, she complained of new onset left wrist pain, suggesting there may be another cause for her shoulder pain that day. There is simply insufficient evidence of continuous symptoms from vaccination through at least May 1 2020.

Given the above, I cannot conclude that Petitioner suffered the residual effects of her vaccine-related injury for the six months required by the Act.

## **CONCLUSION**

Because Petitioner has failed to meet the statutory severity requirement set forth in Section 11(c)(1)(D)(i), Petitioner cannot establish entitlement and therefore, I must **DISMISS** her claim in its entirety. **The Clerk shall enter judgment in accord with this Decision.**[5]

**IT IS SO ORDERED.**

                                                    **s/Brian H. Corcoran**
                                                    Brian H. Corcoran
                                                    Chief Special Master

---

[5] If Petitioner wishes to bring a civil action, he must file a notice of election rejecting the judgment pursuant to § 21(a) "not later than 90 days after the date of the court's final judgment."